CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/23/2019
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **DEBORAH C.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:18-CV-79 |
| ) | |
| **COMMISSIONER, SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Deborah C. ("Deborah") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Deborah alleges that the ALJ erred by finding that she did not suffer from any severe impairments prior to her date last insured, and by failing to properly assess her subjective allegations. I conclude that the ALJ's opinion is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Deborah's Motion for Summary Judgment (Dkt. No. 12) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Deborah failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Deborah filed for DIB on October 30, 2014, claiming that her disability began on October 1, 2007.[2] R. 10, 205. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 81–99. On April 25, 2017, ALJ James Grimes held an administrative hearing to consider Deborah's disability claim. R. 26–80. Deborah was represented by an attorney at the hearings, which included testimony from Deborah and vocational expert Asheley Wells. Id.

On July 7, 2017, the ALJ entered his decision analyzing Deborah's claim under the familiar five-step process,[3] and denying Deborah's claim for disability. R. 10–16. The ALJ

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Deborah's date last insured was December 31, 2008; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 14, 90; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

found that Deborah had the medically determinable impairments of type II diabetes, glaucoma, hypertension, and complications status-post hysterectomy prior to her date last insured. R. 12. The ALJ determined that these impairments or combination of impairments did not significantly limit Deborah's ability to perform basic work-related activities for 12 consecutive months; and thus, they were not "severe" impairments. R. 13. Accordingly, the ALJ determined that Deborah was not under a disability from her alleged onset date of October 1, 2007 through her date last insured of December 31, 2008. R. 16. Deborah appealed the ALJ's decision and on August 2, 2016, the Appeals Council denied her request for review. R. 1–4. This appeal followed.

## ANALYSIS

### Severe Impairments

Deborah asserts that the ALJ erred by finding that her impairments of diabetes, post-total abdominal hysterectomy, hypertension, and glaucoma were not severe impairments. Pl. Br. Summ. J. p. 10. An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

Deborah bears the burden of proving that her impairments were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984).

3

The ALJ considered whether Deborah's impairments constituted severe impairments in step two of his analysis. The ALJ acknowledged Deborah's testimony that after her hysterectomy and subsequent incision rupture she was afraid to lift anything heavy and had abdominal pain. R. 14, 40–43. Deborah also testified that she had side effects from her diabetes medication including stomach pain, headaches and fatigue, and the medication did not control her glucose level. R. 14, 45–46. Deborah testified that her hypertension is not controlled if she uses her prescribed medication. R. 49–50. She also testified that her glaucoma causes headaches and blind spots and she experiences blurry vision and dizziness when her glucose levels are high. R. 52–53. The ALJ determined that Deborah's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, Deborah's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Id.

The ALJ reviewed the state agency physician opinions in the record. On January 20, 2015, state agency physician Donald Williams, M.D., reviewed Deborah's records and determined that she had the medically determinable impairments of diabetes mellitus, hypertension, disorders of the female genital organs and migraine. R. 84. Dr. Williams assessed all the impairments as non-severe, except for Deborah's diabetes. R. 84. Dr. Williams determined that the only physical limitation Deborah would have in her RFC was to avoid concentrated exposure to hazards. R. 87. Dr. Williams noted, "The claimant was diagnosed with non-insulin dependent diabetes mellitus; her AIC levels range from 7 to 9.5 during the time frame. She had a hysterectomy and post procedure follow ups show that she recovered as planned." Id.

The ALJ reviewed Dr. Williams' opinion, and disagreed with his suggested limitation that Deborah avoid concentrated exposure to hazards, noting that despite Deborah's increased blood sugar levels prior to her date last insured, she did not report any symptoms common with diabetes mellitus other than some side effects from the medication Avandia. R. 16. The ALJ noted that Deborah's physical examination findings did not reveal any diabetic complications like neuropathy or retinopathy. Id. The ALJ further noted that Deborah began using injectable insulin in December 2013, five years after her date last insured, and reported feeling reasonably well in January 2012. Id.

On March 27, 2015, state agency physician Lewis Singer, M.D., reviewed Deborah's records and determined that Deborah's diabetes mellitus was a severe medically determinable impairment but resulted in no physical limitations.[4] R. 95–96. The ALJ gave Dr. Singer's opinion great weight.[5] R. 16.

Deborah asserts that the ALJ did not properly explain why he failed to adopt the opinions of the state agency physicians that her diabetes was a severe impairment; and further, that the ALJ failed to build a logical bridge between the evidence and his conclusion that she did not have any severe impairments prior to her date last insured. Pl. Br. Summ. J. p. 11. Upon review, I find that the ALJ's conclusion in step two of his analysis is supported by substantial evidence in the record.

---

[4] The ALJ and the Commissioner assert that Dr. Singer concluded that Deborah had no severe impairments. See R. 16, Comm'r Br. Summ. J. p. 10 n. 2. Indeed, Dr. Singer's opinion states "non-severe" in two places on one page (R. 94), but subsequently notes "severe" next to "Diabetes Mellitus" on the next page. R. 95. Deborah reads Dr. Singer's opinion as finding her diabetes to be a severe impairment. The court agrees that Dr. Singer's opinion seems to indicate that Deborah's diabetes mellitus is a severe impairment, but Dr. Singer assesses no limitations related to that impairment. Thus, I find that any error by the ALJ in stating that Dr. Singer found no severe impairments is harmless.

[5] Deborah asserts that Dr. Singer's RFC assessment indicates that Deborah's RFC should be "reduced" with "appropriate restrictions" due to her diabetes. Pl. Br. Summ. J. p. 10, R. 96. However, Dr. Singer's opinion also specifically states that "No RFC/MRFC assessments are associated with this claim." R. 96.

5

Specifically, regarding Deborah's glaucoma, the ALJ noted that medical evidence reflects that in January 2007, Deborah's glaucoma was stable and under good control with prescribed eye drops. R. 577. Her glaucoma was again noted to be under good control in August 2008. R. 579. The ALJ noted that a 2009 study reflected that Deborah had good visual acuity at 20/20 bilaterally. R. 14, 412–13. Thus, the ALJ concluded that Deborah's glaucoma was not a severe impairment during the relevant period of October 2007 through December 2008.

With regard to Deborah's diabetes, the ALJ noted that she was taking prescribed medication for diabetes and hypertension in 2007, her overall health was described as "fair," and she reported no symptoms aside from a few side effects of the medication Avandia. R. 371–73. Deborah's blood glucose levels increased in 2008, and her physician recommended increasing her medication. R. 359. Deborah's blood glucose levels improved thereafter, and her physician recommended continued regular exercise and weight loss. R. 357.

The ALJ recognized that Dr. Williams indicated that Deborah should avoid concentrated exposure to hazards because of her diabetes. R. 86–87. The ALJ gave Dr. Williams' opinion little weight, finding that Deborah did not report any diabetes-related symptoms and her physical examinations did not reflect diabetic complications. R. 16. The ALJ noted that Dr. Singer found that Deborah had no physical limitations, despite her diabetes diagnosis. R. 94–95. The ALJ further noted that Deborah began taking injectable insulin in December 2013, five years after her date last insured. R. 15, 46–47. The ALJ recognized that the record did not reflect normal glucose levels, but also noted that it did not reflect any reported symptoms common with diabetes. R. 15. The ALJ also noted that Deborah's physical examination findings did not reflect diabetic complications like neuropathy or retinopathy. Id.

6

The ALJ noted that Deborah was taking blood pressure medication in 2007 and her overall health was fair. R. 14. He further noted that in June 2011, Deborah's blood pressure was considered well-controlled with medication. R. 15. Thus, the ALJ determined that Deborah's diabetes and hypertension were not severe impairments. Id.

Regarding Deborah's hysterectomy, the ALJ noted that Deborah's suture line opened a month after surgery, but there was no other evidence to suggest that she had complications from the surgery that exceeded a twelve-month period. R. 15. The record reflects that Deborah's follow up care post-hysterectomy was progressing normally until August 4, 2007, when she developed a wound disruption described as, "at the lower aspect of the incision there is a disruption of the skin of the subcutaneous tissue measuring about 4 cm in length and about 3 cm in depth." R. 314. The next day, Deborah's physician noted that her wound was healing nicely, and was not tender or indurated. R. 313. On August 22, 2007, Deborah's incision was healing nicely with the wound almost closed and Deborah was referred to her treating physician for continued medical care. R. 309. Neither Drs. Williams or Singer found that the medical record established any associated limitations because of Deborah's hysterectomy. R. 86–87, 94–95.

Overall, substantial evidence supports the ALJ's conclusion that Deborah's glaucoma, diabetes, hypertension and hysterectomy recovery did not constitute severe impairments that caused significant limitations in her ability to work for at least 12 months. As noted above, a severe impairment is one that significantly limits the claimant's physical or mental ability to perform "basic work activities," which are the "abilities and aptitudes necessary to do most jobs," such as standing, sitting, lifting, seeing, hearing, speaking. 20 C.F.R. §§ 416.920(c), 404.1522(b). The ALJ analyzed each of Deborah's medically determinable impairments and provided an explanation as to why each impairment did not constitute a severe impairment. The

7

ALJ also explained why he did not adopt Dr. Williams' suggested limitation that Deborah avoid concentrated exposure to hazards. While the record reflects that Deborah suffered from complaints related to her impairments, it does not reflect functional limitations arising from those conditions that would render them "severe."

## Evaluation of Pain and Credibility

Deborah also asserts that the ALJ failed to make specific findings regarding her subjective allegations and failed to provide an explanation as to why he found that her allegations were not fully supported in his decision. Pl. Br. Summ. J. p. 13. Deborah asserts that the ALJ failed to make specific findings regarding her allegations of "debilitating fatigue and lack of energy, headaches, blind spots, blurred vision, fluctuating visual acuity, and dizziness during the relevant period…" Id. at 12.

Deborah's subjective allegations of pain and limitations are not conclusive. Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[6] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[7] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the

---

[6] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

8

alleged symptoms, such as pain.[8] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

Here, the ALJ followed the required two step process, and determined first that there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Deborah's symptoms. R. 14. The ALJ set forth Deborah's subjective complaints about the intensity, persistence and limiting effects of her symptoms in his opinion. Id. The ALJ noted that Deborah testified that she could not lift a baby or anything heavy after her hysterectomy; it was hard for her to go grocery shopping or perform household chores; she developed abdominal pain; she suffered side effects from Avandia such as stomach pain, headaches and fatigue; her glaucoma caused headaches, blind spots and dizziness; she can only stand for 30 minutes at a time, and she needs to lie down for 20 minutes one to two times a day. R. 14. In step two, the ALJ concluded that Deborah's statements concerning the intensity, persistence and limiting effects of her symptoms were not supported by the record. Id.

---

[8] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

9

The ALJ considered Deborah's complaints of headaches and anxiety and determined that they were not medically determinable impairments. R. 12. The ALJ noted that there was "little, if any" evidence in the record that Deborah took medications for headaches, sought treatment for headaches, or saw a specialist for headaches. Id. The ALJ also noted that Deborah took Xanax on occasion for anxiety, but there was no evidence in the record of abnormal mental status evaluations, emergency room visits, any type of therapy, or treatment with a psychologist or psychiatrist. R. 12.

The ALJ also considered Deborah's glaucoma, diabetes, hypertension and status-post hysterectomy and determined that they were non-severe medically determinable impairments. R. 14–16. As set forth above, substantial evidence supports this portion of the ALJ's decision.

Thus, the ALJ discussed both the objective medical evidence and Deborah's subjective complaints and alleged symptoms. The ALJ incorporated the relevant evidence into his narrative discussion and constructed "an accurate and logical bridge" from the evidence in the record to his conclusion. I am not left to guess about how the ALJ arrived at that conclusion. Monroe v. Colvin, 826 F. 3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). I find that the ALJ satisfied his responsibility under SSR 16-3, and substantial evidence supports his RFC finding.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the

defendant, **DENYING** Deborah's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                    Enter: October 23, 2019

*Robert S. Ballou*

                    Robert S. Ballou
                    United States Magistrate Judge